IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JASON N., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:25CV1034 |
| | ) | |
| FRANK BISIGNANO, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>ORDER AND MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE</u>**

The plaintiff, Jason N. ("Jason"), brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claim for social security disability insurance benefits, a period of disability, and supplemental security income.[1] The Court has considered the certified administrative record and dispositive briefing from the parties. Because the decision of the Administrative Law Judge ("ALJ") contains a subjective complaints analysis that is not susceptible to judicial review, the Court remands this matter for further administrative proceedings, as set forth below.

## I. PROCEDURAL HISTORY

Jason filed applications for disability insurance benefits, a period of disability, and supplemental security income in October of 2022, alleging a disability onset date October 17, 2019. (Tr. 229-41.) The applications were denied initially and upon reconsideration. (Tr. 128-47.) After a hearing, the ALJ determined on November 7, 2024 that Jason was not disabled under the Act. (Tr. 17-72.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for the purposes of review. (Tr. 1-6.)

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. *See* Docket Entry 6. By Order of Reference, this matter was referred to the Undersigned to conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c). Docket Entry 12.

## II. STANDARD OF REVIEW

While Section 405(g) of Title 42 of the United States Code "authorizes judicial review of the Social Security Commissioner's denial of social security benefits," *see Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006), the scope of that review is specific and narrow, *see Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Specifically, review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Put simply: the issue before the Court is not whether Jason is disabled but whether substantial evidence supports the finding that he is not, based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the correct process, set forth in 20 C.F.R. §§ 404.1520, 416.920, to determine disability. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).

"The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 416.920(a)(4), 404.1520(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy.

*Id.* at 472. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

The ALJ determined at step one that Jason had not engaged in substantial gainful activity since the alleged onset date of October 17, 2019. (Tr. 19.) The ALJ next found the following severe

impairments at step two: lumbar disc herniation with severe stenosis and disc degeneration, mild right shoulder acromioclavicular joint arthritis and bursitis, diabetes mellitus II, and hypertension. (Tr. 19.) At step three, the ALJ found that Jason did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 21.)

The ALJ next set forth Jason's Residual Functional Capacity ("RFC") and determined that he could perform a reduced range of light work:

> except he must be able to alternate position after every 30 minutes of sitting. He can stand and/or walk for a total of four hours in an 8-hour workday, representing the ability to stand/walk for 30 minutes then needing to sit 30 minutes before standing/walking again. He can frequently reach with the right upper extremity. He can occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. He can occasionally work around unprotected heights and moving mechanical parts.

(Tr. 22.) At the fourth step, the ALJ determined that Jason was able to perform his past relevant work as a receptionist as he had actually performed it and as generally performed in the national economy. (Tr. 26-27.) The ALJ did not make an alternative step five finding.

## IV. DISCUSSION

In his appeal, Jason asserts only that "[t]he ALJ erred by failing to apply the correct legal standards when evaluating [his] allegations of severe pain." Docket Entry 11 at 5 (originally bolded). The record demonstrates that he is correct.

### A. The RFC Determination.

The RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairments and any related symptoms (e.g., pain). *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)") (internal citation omitted); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658

F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Comm. of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Yet, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only [then] may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has held that "meaningful review is frustrated when an ALJ goes straight from listing the evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (explaining that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion"). As noted earlier, the ALJ "must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189). An ALJ's failure to do so constitutes reversible error. *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Where an ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe*, 826 F.3d at 191.

Moreover, "[a]n ALJ assesses the credibility of a claimant's subjective statements about his condition as part of the RFC assessment," *Ladda v. Berryhill*, 749 F. App'x 166, 170 (4th Cir. 2018) (unpublished), using a two-part test: "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged,'" *Craig*, 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)).

If such an impairment exists, the ALJ must then consider, as the second prong of the test, all available evidence, including the claimant's statements about pain, to determine whether the claimant is disabled. *Id.* at 595-96. In so doing, the ALJ need not credit them if they conflict with the objective medical evidence or if

the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id*. Where the ALJ has considered the relevant factors, *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), and heard the claimant's testimony and observed his or her demeanor, the Court will defer to the ALJ's determination regarding those subjective complaints. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Those relevant factors include:

> (i) [Plaintiff's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate his pain or other symptoms;
>
> (v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of his pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use[s] or [has] used to relieve his pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

B. The ALJ's Subjective Complaints Analysis Is Not Susceptible to Judicial Review.

The ALJ began her subjective complaints analysis by summarizing Jason's reported allegations of pain and restrictions as set forth in his self-reported function report. (Tr. 23.) This included allegations of constant pain in his back and arms, limited range of motion in his upper extremities, and fatigue that impacted his ability to lift, squat, bend, stand, reach, use his hands, walk, sit, kneel, climb stairs, concentrate, and complete tasks. (Tr. 23, 279, 284.)

The ALJ next summarized Jason's testimony from the administrative hearing. (Tr. 23-24.) Jason testified to having pain when lifting overhead, pain across his back and into his lower extremities (more severe in the left), needing to change positions continuously, difficultly sleeping, fatigue and decreased stamina, uncontrolled diabetes, neuropathy in his hands and feet, problems with his

toes requiring wound care, dropping things, and requiring a shopping cart for support when grocery shopping for 30 to 40 minutes. (Tr. 23, 24, 42-52, 54, 58.)

Next, the ALJ attempted to complete the two-step *Craig* analysis. First, the ALJ stated that she had carefully considered the evidence and found that Jason's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 26.) The ALJ therefore discharged her duty under the first step. Second, at step two, the ALJ decided that Jason's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 26.)

Here is where the analysis fell short. More specifically, the ALJ made a cursory summary of approximately two and a half pages of some of the medical evidence (Tr. 24-25) from the 2,212-page administrative record (Tr. 1-2212). The ALJ then reached the following conclusions as to Jason's allegations:

> Despite the claimant's allegations of debilitating symptoms and restrictions, he received only conservative treatment for his severe impairments or symptoms suggesting that the symptoms were not as limited as expressed by the claimant and diminish the persuasion of those allegations. Findings on exams do not support the extent of back pain that the claimant alleges. The records document some decreased range of motion but no indication of extent, sometimes only positive straight leg raise, an antalgic gait, but no indication of use of assistive device and no slow/shuffling or significant weakness until 2024 neurology visit (Exhibit B8F, p. 25) and MRI shows improved herniation. While the claimant would be limited, the medical evidence does not support the severe and significant limitations the claimant alleges, including inability to maintain position other than reclining, inability to use hands for handling/fingering or having more significant limitations in right shoulder, significant time off task or absences due to diabetes mellitus or diabetic ketoacidosis issues. After a thorough review of the evidence of record, including the claimant's allegations and testimony, forms completed at the request of Social Security, the objective medical findings, medical opinions, and other relevant evidence, the undersigned finds that the records support the residual functional capacity established in this decision.

(Tr. 26.)

This analysis is problematic for a number for reasons. First, the ALJ asserts that Jason's treatment was "conservative" in nature and that, because of this, his statements concerning the intensity, persistence and limiting effects of his alleged symptoms would be discounted. (Tr. 26.) But Jason was repeatedly hospitalized during the relevant period for a serious medical condition. On December 18, 2021, for example, Jason went to the emergency room after experiencing nausea and vomiting for four days. (Tr. 384.) Treatment notes indicated "signs and symptoms of possible" diabetic ketoacidosis ("DKA") and that "[c]ritical care was necessary to treat or prevent imminent or life-threatening deterioration of the following conditions: Metabolic crisis, renal failure, sepsis and shock." (Tr. 387-88 (emphasis in original).) Jason was treated, stabilized, and was discharged more than three days later on December 22, 2021. (Tr. 409.)

Jason was also repeatedly hospitalized in 2022 and 2023 under similar circumstances for DKA:

- 2/27/2023: "The patient is a 45-year-old man with diabetes and frequent episodes of DKA, rheumatoid arthritis, GERD, who was most recently admitted in late January 2023, who presents to the emergency department on 02/26/2023 with nausea and vomiting similar to previous DKA episodes." (Tr. 932-33);
- 1/26/2023: "45 year old with past medical history of diabetes, DKA, RA, tobacco abuse who was brought to the emergency department via EMS due to nausea and vomiting for about 24-48 hours." (Tr. 961, 959);
- 12/28/2022: "The patient is a 45 yo man with type 2 diabetes on insulin, rheumatoid arthritis, GERD, who presents to the emergency department on 12/28/2022 with vomiting, abdominal pain, and not feeling well[.]" (Tr. 994-99);
- Treatment included, but was not limited to, the administration of morphine as well as insulin. (*See*, *e.g*., Tr. 924-25, 932-33, 939) (ordering morphine and insulin IVs and referencing the "[d]ecision to admit the patient to the hospital due to significant risk of morbidity requiring hospital level of care");
- "Patient was ordered for morphine as well." (Tr. 993);
- "Patient was given 6 units of IV insulin, IV pantoprazole, IV Zofran, IV morphine, IV and oral potassium, and IV normal saline bolus 30 mL/kg." (Tr. 996)
- "Pt got 1l ns, morphine in er."

(Tr. 1030).

Though what constitutes "conservative" treatment is not always subject to a "bright-line rule," *see Dana R. v. Saul*, No. 5:18-CV-00054, 2019 WL 9058136, at *9 (W.D. Va. Aug. 23, 2019), the treatment Jason received far exceeded it. The ALJ erred in finding otherwise, *see Needham v. Comm'r Soc. Sec.*, No. 3:16-cv-0130-YY, 2017 WL 4052184, at *8 (D. Or. Aug. 8, 2017) (determining that occasional emergency room visits for migraines that resulted in being discharged pain free was not conservative treatment).

Beyond this, the Fourth Circuit has distinguished between a situation in which only conservative care is recommended versus a situation "in which there is any suggestion that [a claimant] required more aggressive treatment yet received conservative treatment for other reasons." *Dunn*, 607 F. App'x at 275. Here, there is evidence that Jason required more aggressive treatment for his lumbar disc herniation yet received conservative treatment for other reasons. Specifically, a December 2023 neurosurgery consultation note indicates that Jason had "a large left-sided disc protrusion that causes severe left-sided lateral recess stenosis and neural foraminal stenosis with impingement of the descending S1 nerve root." (Tr. 1530.) "Given his failed conservative treatment [the consultant] recommend a follow-up with Dr. Kim to discuss surgical options." (Tr. 1530.) Surgery was scheduled for Jason's "ongoing problem with associated lower extremity pain and impaired gait" but because Jason had "uncontrolled diabetes" it was delayed while doctors worked to control his blood sugar levels. (Tr. 2060-62.)

Thus, while Jason received only "conservative" treatment for his herniated disc, it was because the severity of another medical condition prevented him from receiving the more aggressive treatment the doctor recommended. This is not the kind of "conservative" treatment that the Fourth Circuit has found to support a negative credibility inference. *See Dunn*, 607 F. App'x at 275; *Dana R.*, 2019 WL 9058136, at *9 ("I do not understand, and the Commissioner did not try to explain, how a 'failing' course of pain medications, injections, and blocks undermined Dana's complaints of pain."). For these reasons, the ALJ erred in discounting Jason's subjective complaints based upon his "conservative" treatment.

The other reason the ALJ gave for discounting Jason's subjective allegations is also problematic. As noted above, the ALJ also discounted Jason's allegations because "[f]indings on exams do not support the extent of back pain that the claimant alleges." (Tr. 26.) However, this determination is incomplete as it says nothing at all about Jason's subjective allegations regarding his

shoulder problem or his diabetes.

And, even setting this aside, the ALJ failed to adequately explain and support her conclusion that "[f]indings on exams do not support the extent of back pain that that the claimant alleges." (Tr. 26.) In fact, the ALJ admitted that Jasons's nerve root impingement was found to require surgery. (Tr. 25 ("A subsequent MRI confirmed disc bulge compressing transversing S1 nerve root. Left L5-S1 hemilaminectomy and discectomy was recommended and scheduled").) The ALJ also identified some of the instances of antalgic gait and positive straight leg assessment. (Tr 24-25, 989, 1024, 1465, 1486, 1504, 1513, 1543-44, 1548, 1553, 1564, 1996-97, 2000, 2040.) Given that her conclusion that Jason's severe impairments could reasonably be expected to cause him some degree of pain (Tr. 26), she had an obligation to do more than provide a conclusory assertion that the medical evidence did not support the extent of pain alleged. *See Woods*, 888 F.3d at 694 ("[T]he ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'") (citation and internal quotations omitted). A remand for further administrative proceedings is therefore in order so that the ALJ may conduct an adequate subjective complaints analysis.

C. The Commissioner's Objections Are Not Persuasive.

The Commissioner's objections to the contrary are not persuasive. The Commissioner notes that in reviewing for substantial evidence, the Court must consider the ALJ's entire decision. Docket Entry 13 at 4. This is true. *See McCartney v. Apfel*, 28 F. App'x 277, 279 (4th Cir. 2002) (unpublished); *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) (unpublished). However, that review only further supports remand.

More specifically, while the ALJ provided a general summary of the medical evidence and medical opinion evidence, (Tr. 24-26) she did not adequately articulate inconsistencies between that evidence and Jason's allegations about the intensity, persistence, and limiting effects of his symptoms. As such, the ALJ's discussion of the medical record is a summary without a meaningful analysis. This error precludes meaningful judicial review of the RFC determination and warrants remand. *See Harry L. v. Bisignano*, No. 3:25-CV-93 (DJN), 2026 WL 617507 (E.D. Va. Feb. 5, 2026) (remanding under similar circumstances); *Marsha W. v. Kijakazi*, No. 1:22CV811, 2023 WL 12196653 (M.D.N.C. Dec. 27, 2023) (same).

By way of (non-exclusive) example, the ALJ's consideration of the medication Jason took to alleviate his pain is not susceptible to judicial

review. "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, [or] referrals to specialists, . . . may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." SSR 16-3p, 2016 WL 1119029, at *8. Yet, while the ALJ mentioned medication or other treatments prescribed to Jason, she never explained whether they were effective. (Tr. 25 (noting Jason was "continued on his current medication"); Tr. 25 ("prescribed furosemide for edema"); Tr. 25 ("administered a cortisone injection for right shoulder bursitis"); Tr. 25 ("prescribed tramadol for pain while waiting on insurance for injection").) *See, e.g.*, *Krontz v. Astrue*, No. 1:07-CV-00303, 2008 WL 5062803, at *7 (N.D. Ind. Nov. 24, 2008) (remanding in part where "the ALJ never mentioned in his decision, much less in the context of his credibility analysis, the effectiveness and side effects of the medication that Krontz takes for pain or the measures that she uses to relieve her pain").

The ALJ also failed to acknowledge Jason's treatment with morphine, which was not limited to his hospitalizations. (Tr. 2005, 11/2/2023 (prescribed Lorcet and morphine "report[ing] these medications are not helping much with his pain. This is not helping. I advised him to take two at a time").) While an ALJ need not discuss every treatment note in the record, the regulations contemplate that an ALJ will consider, among other factors, the type, dosage, effectiveness, and side effects of any medication the claimant has taken to alleviate his pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

Beyond this, the ALJ fails to meaningfully address a number of Jason's allegations, such as his alleged fatigue, decreased stamina, and problems with wound healing due to his diabetes. When an ALJ rejects a claimant's subjective statements, he or she is required to "provide specific reasons for the finding on credibility, supported by the evidence in the case record, and he [or she] must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight he [or she] gave to the individual's statements and the reasons for that weight." *Vellone ex rel. Vellone v. Saul*, No. 20-cv-261 (RA), 2021 WL 2801138, at *4 (S.D.N.Y. July 6, 2021) (cleaned up); *see also* SSR 16-3, 2017 WL 5180304, at *10 (noting that the ALJ must consider the entire case record and give "specific reasons for the weight given" to the claimant's symptoms and those reasons must be "consistent with and supported by the evidence" and must "be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms"). On remand, the ALJ should give specific reasons for the weight given to Jason's allegations

that are susceptible to judicial review.

Moreover, it is unclear whether the ALJ found, or was trying to find, Jason to be non-compliant with medical treatment. At a number of points in the decision, the ALJ makes statements that suggest she may. However, she never explicitly draws this conclusion. (Tr. 24 (finding that "records indicate the claimant was positive for cannabinoids"); Tr. 24 (finding that "[p]hysical therapy and lumbar epidural injection were recommended but the claimant stated he would like to think about it"); Tr. 25 (finding that Jason "was to start a diabetes mellitus journal and track blood glucose/insulin compliance"); Tr. 25 (finding that "the claimant was again admitted for diabetic ketoacidosis [and] [t]he records indicate he previously left against medical advice but came back shortly thereafter").) If on remand the ALJ intends to discount Jason's subjective allegations due to non-compliance, she should make a finding to that effect that is susceptible to judicial review.

The Commissioner cites numerous examples of record evidence that *could* support the ALJ discounting Jason's subjective complaints; the problem is that the ALJ never articulated such an analysis.

Specifically, the Commissioner asserts that "[i]n May 2023, [Jason] received another injection and reported his most recent injection provided a month of pain relief (Tr. 1458, 1460)." Docket Entry 13 at 7. And Jason "said pain medications improved his quality of life by helping control symptoms and making it easier for him to perform activities of daily living (Tr. 1511)." Docket Entry 13 at 8. The Commissioner also points to a medical record in which Jason "told an examiner he had difficulty with 'extended' walking and standing (Tr. 1795)." Docket Entry 13 at 9.

But the ALJ did not discuss any of this, nor did she reconcile it with the other record evidence, rendering these *post hoc* agency justifications. *See Anderson v. Colvin*, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (concluding that the Court may not consider *post-hoc* rationalizations and may only consider reasons first set forth by the administrative agency) (citing *Securities & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947)).

In the same vein, the Commissioner cites the ALJ's reliance on Jason's activities of daily living and the opinions of the non-examining state agency physicians to support the credibility analysis. Docket Entry 13 at 6, 13. The non-examining state agency physicians concluded that Jason could perform a reduced range of light work. (Tr. 82-84, 91-93, 105-06, 116-17.) The ALJ found their opinions to be "generally persuasive because [they are] consistent with the preponderance of the evidence reviewed but additional evidence of

back pain, positive straight leg raise, and antalgic gait, and the claimant's testimony reflect that the claimant's impairments deteriorated the claimant's level of functioning more than they assessed . . . ." (Tr. 26.) Consequently, the ALJ included additional limitations in the RFC, including the thirty-minute sit/stand option. (Tr. 22, 26.)

However, this explanation at most addresses Jason's allegations of back pain. In other words, the ALJ did not meaningfully explain how any of Jason's other subjective complaints were addressed by the RFC limitations or are inconsistent with the record evidence. (Tr. 26.) Instead, elsewhere in the decision, the ALJ again simply concluded that Jason's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 26.) These conclusory assessments are inadequate. *See Harry L.*, 2026 WL 617507, at *7-8.

Last, the Commissioner argues that Jason's daily living activities support the ALJ's subjective complaints analysis. *See* Docket Entry 13 at 9. While the ALJ does mention Jason's daily activities (maintaining bird feeders, caring for his dog, doing some chores) (Tr. 20, 1796), given the other infirmities in the ALJ's analysis, they are insufficient on their own to provide substantial evidence for the subjective complaints analysis. And even setting this aside, it is not clear that the ALJ here adequately considered the extent to which Jason could perform these daily activities or explained how they demonstrated his ability to work an eight-hour day. *See Woods*, 888 F.3d at 695 ("On remand, the ALJ should consider not just the *type* of Woods's daily activities, but also the e*xtent* to which she can perform them in assessing her credibility."); *Stoker v. Saul*, 833 F. App'x 383, 386 (4th Cir. 2020) (unpublished) ("The ALJ failed to explain how Stoker's intermittent exercise (including limited walking), and his ability to perform modest housework (such as cleaning, laundry, and mowing the lawn, each for about two hours, once a week) and enjoy physically undemanding hobbies (reading, watching television, and—two or three times a month—fishing) undermined Stoker's assertions."); *Brown*, 873 F.3d at 269 ("The ALJ noted various of Brown's activities—such as 'cooking, driving, doing laundry, collecting coins, attending church and shopping'—but did not acknowledge the limited extent of those activities as described by Brown or explain how those activities showed that he could sustain a full-time job."). On remand, the ALJ should consider not just the *type* of Jason's daily activities, but also the *extent* to which he can perform them in assessing his credibility.

V. CONCLUSION

Remand for further consideration is necessary.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability be **REVERSED** and that the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for proceedings consistent with this Order. To the extent that Jason seeks an immediate award of benefits, the request is **DENIED**.

A Judgment remanding this action will be entered contemporaneously with this Order.

JoAnna Gibson McFadden
United States Magistrate Judge

September 30, 2026